25 So.3d 586 (2009)
B.O., Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-3682.
District Court of Appeal of Florida, Fourth District.
November 25, 2009.
Rehearing Denied February 11, 2010.
Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
*587 FARMER, J.
An unarmed minor child burglarized a home and, among other things, took two hand guns. The charging document alleged only that he committed two counts of grand theft of a firearm. Neither count alleged that in stealing the firearms he possessed or used a firearm. He pleaded guilty to the crimes as charged and reserved his right to challenge a search. On appeal he also challenges the disposition (i.e. the sentence) increasing the standard penalty to 15 days of secure detention.[1]
The Juvenile Delinquency Code, now part of the Criminal Code of the State of Florida, states that among its purposes are these: "To provide judicial and other procedures to assure due process through which children ... are assured ... enforcement of their constitutional and other legal rights...."[2] In M.F. v. State, 583 So.2d 1383 (Fla.1991), the court made clear that:

"due process of law requires the state to allege every essential element when charging a violation of law, either in adult criminal or juvenile proceedings, to provide the accused with notice of the allegations. Art. I, § 9, Fla.Const.; see, e.g., State v. Rodriguez, 575 So.2d 1262 (Fla.1991); accord In re Gault, 387 U.S. 1, 31-34, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)." [e.s.]
583 So.2d at 1385-86. Our supreme court was obviously carrying out the holding of In re Gault:

"Due process of law requires notice ... which would be deemed constitutionally adequate in a ... criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet."[3] [e.s., c.o.]
Gault explained: "the observance of due process standards, intelligently and not ruthlessly administered, will not compel the States to abandon or displace any of the substantive benefits of the juvenile process."[4]
Our state supreme court has made clear that "[no] child can be placed in the status of a delinquent unless all provisions relating to delinquency are followed and all required due process rights are accorded."[5] [e.s.] It is equally settled that due process will not permit a juvenile to be adjudged delinquent on the basis of violations of law not alleged in the petition of delinquency.[6] And, as we ourselves have said: "[i]t is axiomatic that a sentence can be molded to fit the crime, but the crime cannot be molded to fit the sentence."[7] [e.s.]
With these background principles in hand we turn to the statute employed by the trial judge in this case. The pertinent provisions of § 790.22(9) state:
"Notwithstanding s. 985.245, if the minor is found to have committed an offense that involves the use or possession of a firearm, as defined in s. 790.001, other than a violation of subsection (3), or an offense during the commission of which *588 the minor possessed a firearm, and the minor is not committed to a residential commitment program of the Department of Juvenile Justice, in addition to any other punishment provided by law, the court shall order ... (a) for a first offense, that the minor shall serve a minimum period of detention of 15 days in a secure detention facility ..." [e.s.]
The statute does not specify that it applies when the subject of the theft is a firearm. Rather its express term is use or possession of a firearm in the commission of an offense. The question presented in this case is therefore whether the statute applies when the petition neither cited the statute nor alleged that, in committing the theft, the child used or possessed a firearm.
In State v. Overfelt, 457 So.2d 1385, 1387 (Fla.1984), the court held that to enhance a sentence because of a defendant's use of a firearm, the jury must find the defendant guilty of a crime involving a firearm or otherwise specifically find that a firearm was used.[8] Similarly, in State v. Hargrove, 694 So.2d 729, 730 (Fla.1997), the court held that even where evidence regarding the use of a firearm is uncontradicted, a jury must still make that finding if a mandatory minimum sentence is to be imposed. In State v. Estevez, 753 So.2d 1 (Fla.1999), the court held that even where the evidence is uncontroverted, to sentence a defendant to a minimum mandatory sentence for trafficking, the jury must make express findings of the amount of cocaine involved.
In Galindez v. State, 955 So.2d 517 (Fla. 2007), our court recognized that the United States Supreme Court has itself now made clear that:
"Except for the fact of a prior conviction, a judge may not find any fact that exposes a defendant to a sentence exceeding the relevant statutory maximum, unless that fact inheres in the verdict, the defendant waives the right to a jury finding, or the defendant admits the fact."
955 So.2d at 519. In Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court held that the Due Process Clause and Sixth Amendment's notice and jury trial guarantees require that any fact other than prior conviction that increases the maximum penalty for a crime must be charged in an indictment. In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Court held that, other than the fact of a prior conviction, any fact that increases the penalty for crime beyond prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt. In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court held that the relevant statutory maximum is not the most severe sentence a judge may impose after finding additional facts but is instead simply the maximum available based on the charge and verdict or plea without additional findings. In Blakely the Court noted that "an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law, and it is no accusation in reason...."[9]
*589 State law now recognizes a broadly applicable Constitutional rule about punishment: the accused must be given notice in the charging document of any fact on which a sentencing enhancement will be based. See Bryant v. State, 744 So.2d 1225, 1226 (Fla. 4th DCA 1999) (imposition of minimum three-year sentence for conviction of attempted second-degree murder with a firearm required reversal, where state failed to allege in information that defendant was being charged with use of a firearm and faced potential imposition of a three-year mandatory minimum sentence); Altieri v. State, 835 So.2d 1181, 1183 (Fla. 4th DCA 2002) (absence of any allegation in the information that defendant "discharged" a firearm or destructive device during aggravated assault deprived defendant of notice that he was subject to a mandatory minimum sentence of 20 years for aggravated assault based on the discharge of the firearm); Davis v. State, 884 So.2d 1058, 1059 (Fla. 2d DCA 2004) (holding that imposition of sentencing enhancement for use of firearm during commission of offense was illegal in aggravated battery prosecution, where information failed to charge defendant with element of enhancement that defendant caused death or great bodily harm). The State has brought to our attention nothing in any statute that would dispense with the due process requirement of notice to support a sentencing enhancement in juvenile delinquency cases.
As all the above cases make apparent, the charging document serves an important purpose beyond merely alleging the elements of the crime charged. These cases hold that the charging document must also support the sentence imposed after a finding of guilt. Hence it is irrelevant to the disposition issue that the petition in this case charged all the elements of grand theft. The present issue involves the penalty that may be properly inflicted for the crime actually charged in the petition: the standard penalty or an enhanced penalty depending on facts in addition to the crime's raw elements that were not alleged. Plainly under the above authorities, the only penalty that may be imposed is the one allowed by a charge lacking the facts supporting a § 790.22(9) enhancement.
It is argued that § 790.22(9) is couched in mandatory terms and that these due process principles do not apply in this juvenile delinquency case. The contention is that § 790.22(9) is "designed to get the immediate attention of all juveniles and to issue a `wake-up call' that the state deems their firearm offenses to be serious enough to warrant the automatic deprivation of their liberty for a period of time, even on a first offense." State v. J.Z., 957 So.2d 45, 46-47 (Fla. 3d DCA 2007) (quoting T.M. v. State, 689 So.2d 443, 446 (Fla. 3d DCA 1997)).[10] But the child in J.Z. was charged and found guilty of carrying a concealed weapon and possession of a firearm by a minor. In other wordsunlike the case we face todaythe child was charged with the very predicate fact required by § 790.22(9): in committing his offense he possessed a firearm. Nothing in J.Z. supports a holding that § 790.22(9) may be employed in spite of the absence of notice in the charging document of the facts supporting the enhanced punishment.
Reversed.
*590 CIKLIN, J., concurs specially with opinion.
HAZOURI, J., dissents with opinion.
CIKLIN, J., concurring specially.
I join the majority opinion but write separately to address the dissent, which claims that our holding in State v. S.T., 803 So.2d 782 (Fla. 4th DCA 2001) was ignored by the majority and warrants a different outcome in this case.
In S.T., a juvenile was adjudicated delinquent for grand theft and burglary of a dwelling when he stole, among other things, two firearms. Id. While awaiting adjudication, he was placed on community control under the Department of Juvenile Justice and as a result, was given a full 15 days credit toward the minimum mandatory 15 days detention at the time the court finally disposed of the case. Id. This court reversed the 15 days credit, holding that strict application of section 790.22(9) requires an additional and separate minimum mandatory 15 days of secure detention after adjudication. Id. at 783.
As such, the facts in S.T. are inapposite. Unlike the instant case, S.T. did not involve any type of allegation that the juvenile lacked notice of the 15 day mandatory detention if found to have committed an offense that involves the use or possession of a firearm. The S.T. court reversed because the plain language of 790.22(9) strictly prohibits a minor from receiving credit for time served before adjudication. Id.
Although cases cited by the dissent suggest section 790.22(9)'s mandatory sentence serve to deter delinquent acts involving firearms, these cases do not suggest the statute's legislative intent goes so far as to usurp quite basic principles of due process.
As noted by the majority, "due process of law requires the state to allege every essential element when charging a violation of law, either in adult criminal or juvenile proceedings, to provide the accused with notice of the allegations." M.F. v. State, 583 So.2d 1383, 1385-86 (Fla.1991) (citation omitted).
A juvenile receives notice of the crimes charged and automatic enhanced penalties that will follow by way of a specifically charged petition for delinquency, not from conjecture surrounding the acts that led to its filing. See D.M.M. v. State, 275 So.2d 308 (Fla. 2d DCA 1973). As suggested in the majority opinion, a sentence can be molded to fit the crime, but the crime cannot be molded to fit the sentence.
Since the subject charging document failed to use the words necessary to trigger an automatic penalty enhancement, B.O.'s sentence for grand theft of a firearm was not subject to that automatic enhancement, after the fact. See Bryant v. State, 744 So.2d 1225, 1226 (Fla. 4th DCA 1999).
The majority's holding in this case imposes no new, additional or unjust requirements on the State. If the State seeks to "get the immediate attention of all juveniles and to issue a wake-up call" as referenced by the dissent, all it must do is simply add the words "and in so doing used or possessed a firearm" to its charging document. In my opinion, it is constitutionally impermissible to bury the "wake-up call" in an innocuous charge calling attention only to the crime alleged without setting forth, with specificity, the aggravating facts that will lead to an automatic deprivation of freedom. Contrary to the argument set forth by the State, the legally insufficient petition for delinquency filed in this case was not close enough. I understand the basis of the dissent's emphasis that juveniles are entitled to a "minimum *591 standard of due process" but not a "full panoply . . . of rights." Still, it is not too much to expect the State to carefully prepare a charging document which includes specific elements required for an automatic penalty enhancement. This is not an undue burden when justice and liberty hang in the balance, and I believe, included among those most minimum of due process standards afforded even to juveniles.
HAZOURI, J., dissenting.
I respectfully dissent. The majority fails to address this court's holding in State v. S.T., 803 So.2d 782 (Fla. 4th DCA 2001), which involves a factually similar scenario. In that case, the trial court adjudicated a defendant delinquent for the offenses of grand theft and burglary of a dwelling. The only time a firearm appeared during the commission of the crime was when it was "[a]mong the items stolen." Id. at 782. The trial court did not commit the defendant to fifteen days detention, as required by section 790.22(9); but rather, it credited the defendant with fifteen days for time served in detention. Id. This court reversed and remanded, requiring the strict application of section 790.22(9) and its mandatory fifteen-day detention period. Id. at 783.
In this case, the petition alleged two counts of grand theft of a firearm. B.O. did not, nor did the petition say that B.O. did, use or possess a firearm in any other capacity during the commission of the crime. The petition also did not cite section 790.22(9)'s possible application. B.O.'s petition, however, gave him proper notice of section 790.22(9)'s possible application because, as in S.T., the taking of a handgun by a juvenile, alone, gives notification of section 790.22(9)'s mandatory applicationeven if that theft is the only time in which the juvenile had possession of a handgun during the commission of a crime. Such a strict application of section 790.22(9) is well-recognized and in accordance with section 790.22(9)'s legislative purpose of deterring future crimes by juveniles, especially those involving firearms. See State v. J.Z., 957 So.2d 45, 46-47 (Fla. 3d DCA 2007) (stating that section 790.22(9) is "`designed to get the immediate attention of all juveniles and to issue a "wake-up call" that the state deems their firearm offenses to be serious enough to warrant the automatic deprivation of their liberty for a period of time, even on a first offense'" (quoting T.M. v. State, 689 So.2d 443, 446 (Fla. 3d DCA 1997))); see also State v. R.C.S., 837 So.2d 517, 518 (Fla. 3d DCA 2003) (stating that "the legislature purposely intended the mandatory minimum detention provision of [section 790.22(9)] to act as an example of what might lie ahead should one persist in further criminal activity"); T.M., 689 So.2d at 446 (stating that section 790.22(9)'s "intent clearly is to have a deterrent effect to hopefully prevent the juvenile's escalation into the adult criminal justice system").[11] *592 By disregarding S.T., the majority has in turn disregarded section 790.22(9)'s legislative purpose and accompanying case law.
The majority also concludes that the petition for delinquency in this case does not comport with due process because its specific wording cited neither the possible sentencing under section 790.22(2), nor used the express terms of use or possession of a firearm in setting forth the elements of the crime under which B.O. was charged. This proposition, however, goes against well-settled precedent. Namely, that juvenile offenders are treated differently in the criminal justice system, as they are entitled only to a minimum standard of due process. To support its argument, the majority cites both statutory and case law for the general proposition that juveniles are entitled to due process. While juveniles are entitled to due process, they are not entitled to the panoply of rights of due process accorded to adults, as they are treated differently and more sympathetically than adults in the criminal justice system. This was well-articulated by the Florida Supreme Court in In Interest of C.J.W., 377 So.2d 22 (Fla.1979). There, the court stated:
[W]e note that certain significant distinguishing characteristics justify the differences of approach and procedure between the juvenile justice system and the criminal justice system. A child offender, even after being adjudged delinquent, is never held to be a criminal, even if the act would be considered a crime if committed by an adult. The key to this difference in approach lies in the juvenile justice system's ultimate aims. Juveniles are considered to be rehabilitatable. They do not need punishment. Their need lies in the area of treatment. Therefore, while a juvenile whose liberty the state seeks to restrain must be afforded a certain minimum standard of due process, it has never been held that he enjoys the full panoply of procedural rights to which one accused of a crime is entitled.

Id. at 23-24 (emphasis added).
Furthermore, the majority's position impermissibly expands on the procedural requirements of a petition for delinquency by seeking to hold the state accountable for not stating in the petition that either section 790.22(9) was applicable or that B.O. used or possessed a firearm during the commission of a crime when this is not otherwise required under the law. Although "due process of law requires the state to allege every essential element when charging a violation of law," a petition fulfills this notice requirement when it "properly allege[s] every essential element of the offense." M.F. v. State, 583 So.2d 1383, 1385-86 (Fla.1991); see also T.C.E. v. State, 965 So.2d 338, 340 (Fla. 5th DCA 2007) (holding that "[a] charging document is fundamentally defective only where it totally omits an essential element of the crime or is so vague, indistinct, or indefinite that the defendant is misled or exposed to double jeopardy" (emphasis added)). Nowhere has it been held that a petition must specifically cite section 790.22(9) or include the express terms use or possession of a firearm in order to trigger section 790.22(9)'s application. In fact, section 790.22(9) contains no pleading requirement and its plain meaning requires its application when, simply, "the minor is found to have committed an offense that involves the use or possession of a firearm." Id. (emphasis added). That is exactly the case here, as B.O. was a minor found guilty of an offense that involved the possession of a firearm, i.e., when B.O. *593 took two firearms into his possession during the commission of a crime.
Accordingly, the omission of the possible application of section 790.22(9) and of the words use or possession of a firearm in a petition for theft of a firearm does not, in and of itself, violate the notice requirements of due process or render that petition inadequate. This proposition is bolstered by our decision in S.T., which holds that the theft of a firearm, alone, will sufficiently notify a juvenile offender of section 790.22(9)'s possible application. The majority's position, in contrast, impermissibly expands both the due process rights of juveniles and the procedural requirements of a petition by calling for more than what the law requires. I, therefore, dissent.
NOTES
[1] We affirm on the issue involving the search without further comment.
[2] § 985.01(1)(a), Fla. Stat. (2008).
[3] 387 U.S. at 33-34, 87 S.Ct. 1428.
[4] 387 U.S. at 21, 87 S.Ct. 1428.
[5] D.T.H. v. State, 348 So.2d 1155, 1157 (Fla. 1977).
[6] D.M.M. v. State, 275 So.2d 308 (Fla. 2d DCA 1973).
[7] In Interest of S.L.D., 394 So.2d 1072 (Fla. 4th DCA 1981).
[8] No one disputes that a factual issue submitted to a jury for resolution must first be alleged in the charging document.
[9] 542 U.S. at 301-02, 124 S.Ct. 2531; see also Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) (sentencing judge may not rely on aggravating factors not inherent in verdict or embraced by defendant's plea).
[10] Gault took notice of the following, however: "`Unless appropriate due process of law is followed, even the juvenile who has violated the law may not feel that he is being fairly treated and may therefore resist the rehabilitative efforts of court personnel.'" 387 U.S. at 26, 87 S.Ct. 1428 (quoting JUVENILE DELINQUENCYITS PREVENTION AND CONTROL (Russell Sage Foundation, 1966), p. 33).
[11] This legislative purpose was recognized by the Florida Legislature itself when this law was first enacted. In the 1993 Laws of Florida, it stated:

WHEREAS, the love affair between juveniles and firearms has reached an all-time high here in Florida, and
WHEREAS, the courts, the Legislature, and law enforcement cannot be the sole solution to stem our rising juvenile crime statistics, and
WHEREAS, it is the will of the Legislature and all Floridians that parental involvement, accountability, and responsibility become the key to solving our existing broken juvenile criminal justice system, and
WHEREAS, it is the will of Floridians all across this great state of ours that juveniles who violate laws pertaining to the illegal use of firearms be dealt with in a swift and certain and severe manner. . . .
Ch. 93-416, Preamble, at 216, Laws of Fla. (emphasis added).